# Exhibit 1

SETTLEMENT CONFIDENTIAL

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CARLOS RAMIREZ,<br><br>on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>THE PARADIES SHOPS, LLC,<br>a Georgia limited liability company,<br><br>    Defendant. | Case No.: 1:21-cv-03758-ELR |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated May 13, 2024, is made and entered into by and among: (1) Plaintiff Carlos Ramirez ("Plaintiff"), individually and on behalf of the Settlement Class Members (as defined below); and (2) Defendant The Paradies Shops, LLC ("Defendant" or "Paradies") (collectively, the "Parties").

## I.    BACKGROUND

1.    Paradies operates retail and dining facilities, including at airports.

2.    From October 8 to 13, 2020, Paradies's internal administrative system was accessed by an unknown, unauthorized actor via a Ransomware Attack. Paradies's investigation of the Ransomware Attack determined that the threat actor accessed systems that contained certain records. These records included, but were not limited to, data that Paradies, or a company it acquired or that acquired it,

DocuSign Envelope ID: E00A35AB-4925-412C-B5B5-ED7FFE85C81B

required from employees as a condition of employment, including names and Social Security numbers.

3.     After Plaintiff first received notice of the Ransomware Attack on or about June 30, 2021, Plaintiff filed a putative Class Action Complaint (ECF No. 1)("Complaint") on September 10, 2021, in the United States District Court for the Northern District of Georgia.

4.     Plaintiff's Complaint brought claims against Paradies for negligence, breach of implied contract, invasion of privacy, and breach of confidence.

5.     Paradies filed a Motion to Dismiss each of these claims. (ECF No. 8). The Court granted the Motion to Dismiss and dismissed the case. (ECF No. 24).

6.     Plaintiff appealed the dismissal, and the Eleventh Circuit reversed the Court's dismissal in part, allowing the negligence claim to proceed.

7.     Thereafter, on November 17, 2023, the parties participated in a mediation facilitated by an experienced mediator, retired Judge John Thornton. After mediation, the parties remained at an impasse.  Following adjournment, the parties resumed litigating the case, including serving discovery requests and negotiating a confidentiality order and a protocol for discovery of electronically stored information.  In April 2024, the parties resumed discussions regarding a potential settlement, and on May 13, 2024, the parties reached an agreement in

principle, the terms of which were later finalized in this Settlement Agreement and the attached exhibits.

8.    Pursuant to the terms set out below, this Settlement Agreement provides for the full and final resolution, discharge and settlement of all claims and causes of action asserted, or that could have been asserted, against Paradies and the Released Persons (as defined below) arising out of or relating to the Ransomware Attack, by and on behalf of the Representative Plaintiff and Settlement Class Members (as defined below) and any other such actions by and on behalf of any other persons in the United States relating to the Ransomware Attack. Notwithstanding anything to the contrary herein, the settlement contemplated by this Settlement Agreement is subject to Carrier Approval (as defined in Section 1.4 below), and then preliminary and final approval by the Court.

## II.    REPRESENTATIVE PLAINTIFF'S CLAIMS AND BENEFITS OF SETTLING

Representative Plaintiff believes the claims asserted in the Litigation (as defined below), as set forth in the Complaint, have merit. Representative Plaintiff, and his counsel who are proposed as Class Counsel ("Proposed Class Counsel"), recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Paradies through motion practice, trial, and potential appeals. They have also taken into account the uncertain

DocuSign Envelope ID: E00A35AB-4925-412C-B5B5-ED7FFE85C81B

outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Class Counsel are experienced in class action litigation and are very knowledgeable regarding the relevant claims, remedies, and issues generally in such litigation and in the privacy issues specific to this Litigation. They have determined that the settlement set forth in this Settlement Agreement, which provides compensation for those individuals who are alleged to have suffered the consequences of the Ransomware Attack, is fair, reasonable, and adequate, and in the best interest of Representative Plaintiff and the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Paradies denies all of the material contentions and claims alleged against it in the Litigation, and all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Paradies specifically denies that Representative Plaintiff and the Settlement Class Members are entitled to any relief from Paradies. Paradies further asserts that neither the Representative Plaintiff nor the Settlement Class Members have suffered harm and that the complications of managing a potential trial in this matter among other reasons would preclude class certification in the absence of settlement. Nonetheless, without making any admission of wrongdoing whatsoever, Paradies has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this

Settlement Agreement. Paradies has also considered the uncertainty and risks inherent in any litigation. Paradies has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    SETTLEMENT TERMS

**NOW, THEREFORE**, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among Representative Plaintiff, individually and on behalf of the Settlement Class Members, and Paradies that, subject to Carrier Approval and the approval of the Court, the Litigation be forever resolved, settled, compromised, and dismissed with prejudice on the following terms and conditions:

1. **Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1.    "Agreement" or "Settlement Agreement" means this agreement.

1.2.    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3.    "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C.

§ 1711, et seq. ("CAFA"), to be served upon the appropriate state official in each state where a Settlement Class Member resides and the appropriate federal official by the Claims Administrator. Costs for preparation and issuance of the CAFA Notice will be paid by Payor.

1.4.    "Carrier Approval" means written approval by the Carriers without reservation to the fact of settlement as set forth in this Agreement and to the Carriers paying $6,875,720 to fund the Settlement, subject to the provisions of Section 12 (Carrier Approval).

1.5.    "Carriers" means AXA XL and Beazley.

1.6.    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.7.    "Claims Administrator" means Angeion, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, subject to approval by the Court.

1.8.    "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.10.2 which shall be 90 days after the Class Notice Date.

1.9.    "Claim Form" means the form that the Settlement Class Members must complete and submit on or before the Claims Deadline in order to be eligible for the benefits described herein. The Claim Form shall require a sworn signature or electronic verification under penalty of perjury but shall not require a notarization.

1.10.  "Class List" means the record maintained by Paradies of names and addresses in the United States to which Paradies (through its vendor Epiq) sent data breach notifications in 2021.

1.11.  "Class Notice Date" means thirty (30) days after entry by the Court of the Preliminary Approval Order.

1.12.  "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration, including the costs of Notice and the CAFA Notice.  This would include, for example and without limitation, the costs of applying the National Change of Address database from the United States Postal Service and the Death Master File from the Social Security Administration and tax reporting caused by this Settlement Agreement.  .

1.13.  "Court" means the United States District Court for the Northern District of Georgia.

1.14.  "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.15.  "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.16 and ¶ 9.1 herein have occurred and been met.

1.16.  "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to

appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorney's fee award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.17. "Judgment" means a Final Approval Order and Judgment rendered by the Court.

1.18. "Litigation" means *Carlos Ramirez v. The Paradies Shops, LLC*, Case No. 1:21-cv-03758-ELR, pending in the United States District Court for the Northern District of Georgia.

1.19. "Notice" means the written notice to be sent to or made available to the Settlement Class Members pursuant to the Preliminary Approval Order, including the a short form notice and the long form notice.

1.20. "Notice Program" means the claim notice program as explained in ¶ 3.2 herein.

1.21. "Objection Date" means the date by which objections to the settlement from Settlement Class Members must be filed with the Clerk of Court in order to be effective and timely and shall be sixty (60) days after the Class Notice Date.

1.22. "Opt-Out Date" means the date by which requests for exclusion from settlement must be postmarked in order to be effective and timely and shall be sixty (60) days after the Class Notice Date.

1.23. "Preliminary Approval Order" means the proposed order preliminarily approving the settlement and directing mailed (and, where possible, emailed) Notice to the Settlement Class of the pendency of the Litigation and of the settlement.

1.24. "Payor" means the entity paying the Settlement Amount.

1.25. "Plaintiff's Counsel" and "Proposed Class Counsel" mean John A. Yanchunis of Morgan & Morgan and Ryan D. Maxey of Maxey Law Firm, P.A.

1.26. "Ransomware Attack" means the ransomware attack in 2020 during which the threat actor accessed systems that contained certain records. These records included, but were not limited to, data that Paradies, or a company it acquired, or that acquired it, required from employees as a condition of employment, including names and Social Security numbers.

1.27. "Related Entities" means Paradies's past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint ventures, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors,

consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers and reinsurers (in both cases, if and only if, and even then only to the extent, Carriers have provided Carrier Approval and fully funded the Settlement), past, present, and future, and all persons acting under, by or though, or in concert with any of them, other than any individual who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge.

1.28.  "Released Claims" shall collectively mean any and all injuries, losses, damages, costs, expenses, fines, penalties, compensation, claims, suits, rights, rights of set-off and recoupment, demands, actions, obligations, causes of action, and liabilities of any and every kind, nature, type, description, or character, whether known or unknown, contingent or vested, in law or in equity, based on direct or vicarious liability, and regardless of legal theory, of Representative Plaintiff or any Settlement Class Member that were or could have been asserted (whether individually or on a class-wide basis) based on, relating to, concerning or arising out of the Ransomware Attack, alleged theft or misuse of the personal information of Paradies's employees, employees of a company Paradies acquired (or was acquired by), or other individuals (whether or not associated with Paradies), or the allegations,

facts, or circumstances related to the Ransomware Attack as described in the Litigation including, without limitation, any causes of action for or under: state consumer protection statutes, including that of New York; the California Customer Records Act; the CCPA; the California Unfair Competition Law; the California Consumer Legal Remedies Act; the Confidentiality of Medical Information Act; the New York General Business Law; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; any federal, state or local statutory or regulatory claims, including but not limited to, the consumer protection laws and unfair and deceptive trade practice laws or other common laws or statues of all fifty (50) states, U.S. territories, and the United States; and further including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorney's fees and litigation costs, expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by Representative Plaintiff or any Settlement Class Member against any of the Released Persons based on, relating

to, concerning or arising out of the Ransomware Attack, alleged theft or misuse of the PII of Paradies's employees, employee of a company Paradies acquired, or other individuals, or the allegations, facts, or circumstances related to the Ransomware Attack. Released Claims shall include Unknown Claims as defined in ¶ 1.35. Released Claims shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class. The Released Claims shall be accorded the broadest preclusive scope and effect permitted by law against the Settlement Class Members and this definition of Released Claim is a material term of this Settlement Agreement.  Notwithstanding anything to the contrary set forth herein, Released Claims do not include any claims Released Persons may have against (i) the parties responsible for the Ransomware Attack and/or (ii) the Carriers, including but not limited to if Carrier Approval is not given or the Settlement is not fully funded by Carriers.

1.29.  "Released Persons" means Paradies, the Related Entities and each of their past or present parent companies, subsidiaries, divisions, related or affiliated individuals and entities, divisions, successors, predecessors (including companies they have acquired, purchased or absorbed), subcontractors, assigns and joint venturers, and each of their respective successors, predecessors, officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys,

DocuSign Envelope ID: E00A35AB-1025-412C-B5B5-ED7F5E85C01B

accountants, lenders, underwriters, benefits administrators, investors, funds, indemnities, insurers and reinsurers (in both cases, if and only if, and even then only to the extent, Carriers have provided Carrier Approval and fully funded the Settlement), past, present, and future, and all persons acting under, by or though, or in concert with any of them.

1.30.  "Representative Plaintiff" means Plaintiff Carlos Ramirez.

1.31.  "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.32. "Settlement Class" means all individual U.S. residents to whom Paradies (through its vendor Epiq) sent notice of the Ransomware Attack, as evidenced by the Class List. Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge. Defendant represents that the Settlement Class contains approximately 72,376 individuals.

1.33. "Settlement Class Member(s)" means an individual (or individuals) who falls within the definition of the Settlement Class. If a Settlement Class Member dies before the Effective Date, they are no longer a Settlement Class Member.

1.34. "Settling Parties" means, collectively, Paradies and Representative Plaintiff, individually and on behalf of the Settlement Class, and "Settling Party" means any of those entities or persons individually.

1.35. "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiff, does not know or suspect to exist as of the date of the entry of the Preliminary Approval Order that, if known by any of them, might have affected their settlement with, and release of, the Released Persons, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiff expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South

Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Representative Plaintiff, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.36. "United States" as used in this Settlement Agreement includes the District of Columbia and all territories of the United States.

2. **Settlement Benefits**

2.1.    Notice and Claims Administration Prior to the Effective Date. Payor shall pay for all Costs of Claims Administration (including that of providing Notice) to be incurred prior to the Effective Date, including those incurred through agreement with the Claims Administrator.   Prior to the Effective Date, such payments shall be directly billed to and/or borne by Payor.  Payor will have a "Notice and Claims Administration Credit" for the amount of such payments made prior to the Effective Date.

2.2.    Settlement Fund. If there is no objection to the Settlement, then (i) within ten (10) days of the entry of Judgment, Payor will fund a non-reversionary cash settlement fund in the amount of $6,875,720 (the "Settlement Amount") less the Notice and Claims Administration Credit for the benefit of Settlement Class Members (the "Settlement Fund") and (ii) Paradies and Payor waive their right to appeal.  If there is an objection to the Settlement, then within thirty (30) days of the Effective Date, Payor will fund the Settlement Fund. In either case, the Settlement Fund shall be deposited in an interest-bearing Qualified Settlement Fund in the name of the Angeion for the benefit of the Settlement Class. As set forth below, the Settlement Fund will be used to pay for: (1) reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time; (2) reimbursement for Extraordinary Losses and Extraordinary Attested Time; (3) Credit Monitoring Services as

described in ¶2.7; (4) Residual Cash Payments as described in ¶2.9; (5) Costs of Claims Administration (including costs associated with Notice) not paid prior to the Effective Date; and (6) attorneys' fees and expenses awarded by the Court. Notwithstanding anything to the contrary herein, under no circumstances will Defendant pay more than $6,875,720 in connection with this Settlement.

2.3.    Reimbursement for "Ordinary" Out-of-Pocket Losses and Ordinary Attested Time. All Settlement Class members may submit a claim for Ordinary Out-of-Pocket Losses and Ordinary Attested Time up to $1,000 per individual. The Settlement Fund will be used to pay valid and timely submitted claims for each of the following categories:

2.3.1. "Ordinary Out-of-Pocket Losses" are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Ransomware Attack or in the response to the Ransomware Attack that were incurred between October 8 2020 and the Claims Deadline. Ordinary Out-of-Pocket Losses may include, without limitation, the following: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs.

2.3.2. Settlement Class Members who elect to submit a claim for reimbursement of Ordinary Out-of-Pocket Losses must provide to the Claims Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting the unreimbursed cost, loss, or expenditure; and (3) a brief description of the documentation describing the nature of the cost, loss, or expenditure, if the nature of the cost, loss, or expenditure is not apparent from the documentation alone. Documentation supporting Ordinary Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents, such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

2.3.3. Whether or not they incurred Ordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to 5 hours of time spent responding to receiving notice of the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken in response to receiving notice of the Ransomware Attack; and (2) the time associated with each action ("Ordinary Attested Time").

2.4. <u>Reimbursement for "Extraordinary" Losses and Extraordinary Attested Time</u>. In addition to submitting a claim for Ordinary Out-of-Pocket Losses,

Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Extraordinary Attested Time up to $25,000 per individual.

2.4.1. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Ransomware Attack, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information.

2.4.2. Settlement Class Members who elect to submit a claim for reimbursement of Extraordinary Losses must provide to the Claims Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting the unreimbursed cost, loss, or expenditure; and (3) a brief description of the documentation describing the nature of the cost, loss, or expenditure, if the nature of the cost, loss, or expenditure is not apparent from the documentation alone. Documentation supporting Extraordinary Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the unreimbursed cost, loss, or expenditure incurred. "Self-prepared" documents

such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support to other submitted documentation.

2.4.3. Extraordinary Losses will be deemed "fairly traceable" if (1) the timing of the unreimbursed cost, loss, or expenditure occurred on or after October 8, 2020; and (2) the personal information used to commit identity theft or fraud consisted of the same type of personal information that was provided to Defendant prior to the Ransomware Attack.

2.4.4. Whether or not they incurred Extraordinary Losses and whether or not they made a claim for Ordinary Attested Time, Settlement Class Members may also submit a claim for up to 10 hours of time spent remedying identity theft, fraud, or other misuse of their information related to the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken to remedy identity theft, fraud, or other misuse of their information related to the Ransomware Attack; and (2) the time associated with each action ("Extraordinary Attested Time").

2.5.    Settlement Class Members seeking out-of-pocket expense reimbursement must complete and submit either a hard copy or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. The Claim Form must be verified by the Settlement Class Member

with an attestation that the claimant believes that the unreimbursed costs, losses, or expenditures claimed were incurred as a result of the Ransomware Attack.

2.6.    *Pro Rata* Decrease of Claims for Ordinary Out-of-Pocket Losses, Ordinary Attested Time and Extraordinary Losses, and Extraordinary Attested Time. If the aggregate amount of Approved Claims for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses, and Extraordinary Attested Time exceeds the remaining amount of the Settlement Fund after payment for Costs of Claims Administration (including costs associated with Notice), and attorneys' fees and expenses awarded by the Court, Approved Claims for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses, and Extraordinary Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

2.7.    Credit Monitoring Services.  Settlement Class Members who submit a claim can elect to enroll in three (3) years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they

submit a claim for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses, and/or Extraordinary Attested Time. A unique redemption code, allowing Settlement Class Members to enroll in these services will be sent to each Settlement Class Member who submits a valid claim for such services within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is an Approved Claim, whichever is later.

2.8.   *Pro Rata* Decrease of Claims for Credit Monitoring Services. If the aggregate amount of Approved Claims for Credit Monitoring Services exceeds the remaining amount of the Settlement Fund after payment for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses, and Extraordinary Attested Time, Approved Claims for Credit Monitoring Services will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

2.9.   Residual Cash Payment. If funds remain in the Settlement Fund after the payment of Approved Claims for Credit Monitoring Services, Settlement Class Members will, whether or not they make a claim, receive a cash payment via a check mailed the address on the Class List (as updated by the Claims Administrator based on the National Change of Address database or a Settlement Class Member's Claim Form, as the case may be). The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of Approved Claims for Credit Monitoring Services by the number of Settlement Class Members. Settlement

Class Members will have ninety (90) days to cash the checks, after which any uncashed checks will be void. If the aggregate value of void checks makes it economically feasible, such funds (after decreasing the total by the cost of any anticipated tax reporting required by Defendant and other ancillary expenses) will be disbursed *pro rata* via a second round of checks issued to those who cashed checks issued during the first round of checks. Checks issued during the second round will be void if not cashed within ninety (90) days. If the combined value of checks issued to any individual Settlement Class Member exceeds $550, the cost of any associated tax reporting required by Defendant shall be accounted for in and paid for by the remaining funds. The aggregate value of void checks after the second round (or, if there is no second round of checks, after the first round of checks) and/or remaining funds following the preparation of any such required tax documents on behalf of Defendant will be paid to increase the length of credit monitoring for those who elect it if possible, or if not, to a *cy pres* recipient to be agreed upon by the parties and approved by the Court or, if they cannot agree, selected by the Court.

 2.10. <u>The Claim Form.</u>

  2.10.1. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct to the best of his or her knowledge and belief and is being made under penalty of perjury. Notarization shall not be required. The Settlement Class Member must reasonably attest that the

out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Ransomware Attack. Failure to provide supporting attestation and documentation as requested on the Claim Form and required under ¶¶ 2.2,2.3, or 2.4 shall result in denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.12.

2.10.2.    To be valid, claims must be complete and submitted to the Claims Administrator on or before the Claims Deadline.

2.10.3.    No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of this Settlement Agreement.

2.10.4.    Settlement Class Members who submit a Claim Form must designate the method for payment of their claim on the Claim Form, which will include the receipt of payment via check by mail, or via PayPal, Zelle, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. Claim Forms failing to clearly make a single designation will receive a check by mail to the last known address on file with the Claims Administrator. In the event an electronic payment platform returns a payment to the Claims Administrator, no later than fourteen (14) days after being notified of the return of such payment, the Claims Administrator will mail a check to the Settlement Class Member's last known address on file with the Claims Administrator.

2.11. <u>Business Practice Commitments</u>. Paradies agrees to provide a declaration detailing business practice changes implemented after the Ransomware Attack. For a period of three (3) years, Paradies shall maintain these business practice changes, or adopt other business practice so long as there is no material adverse impact on information safety relative to the current state. Representative Plaintiff and Proposed Class Counsel may obtain injunctive relief for violation of this provision. Nothing in this provision prohibits Paradies from changing vendors or product/services for the identified business practices so long as a there is no material adverse impact on information safety. Due to their confidential and sensitive nature, those enhancements and practices are not being publicly disclosed herein but have been shared with Plaintiff's Counsel, who agrees to maintain the confidentiality of that information.

2.12. <u>Dispute Resolution for Claims.</u>

2.12.1. The Claims Administrator will determine whether: (1) the claimant is a Settlement Class Member based on information to be provided to the Claims Administrator by Defendant's counsel; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to support the claimant's class membership and the expenses described in ¶¶ 2.2,2.3, and 2.4; and (3) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the

claimed unreimbursed cost, loss, or expenditure as a result of the Ransomware Attack (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed unreimbursed costs, losses, or expenditures, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

2.12.2.    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request Claim Supplementation and give the claimant thirty (30) days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (e.g. illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than six months from the Effective

DocuSign Envelope ID: E00A35AB-1025-412C-B5B5-ED7FFE85C01B

Date. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

   2.12.3.  Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Claims Administrator shall reject the claim without any further action.

   2.12.4.  Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.

   2.12.5.  Within thirty (30) days of the Claims Deadline, the Claims Administrator shall provide the Settling Parties' counsel with a summary of Facially Valid Claims, stating the types of claims, the total approved claim amounts by claim type, and a description of the support provided for claims for reimbursement for Ordinary Out-of-Pocket Losses and/or Extraordinary Losses and Ordinary Attested

Time and Extraordinary Attested Time. Within fifteen (15) days after receiving such summary, one or more of the Settling Parties may object to any claim and instruct the Claims Administrator to withhold approval of said Facially Valid claim so that the objecting party may seek review of said claim by a third-party settlement referee agreed upon by the Parties or appointed by the Court if no such agreement is reached and paid for by the objecting party.

2.13.  <u>Settlement Class Certification.</u> The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.14.  <u>Confidentiality of Information Submitted by Settlement Class Members</u>. Information submitted by Settlement Class Members pursuant to this Settlement Agreement shall be deemed confidential and protected as such by the

DocuSign Envelope ID: E00A35AB-1025-412C-B5B5-ED7FFE85C01B

Parties and the Claims Administrator.  Such information shall only be used for purposes of performing under or in furtherance of this Settlement Agreement.

## 3.  **Order of Preliminary Approval and Publishing of Notice of Final Fairness Hearing**

3.1.   As soon as practicable after (a) the execution of the Settlement Agreement and (b) Carrier Approval, Proposed Class Counsel shall submit this Settlement Agreement to the Court as part of an unopposed Motion for Preliminary Approval of the Settlement Agreement. The motion for preliminary approval shall request entry of a Preliminary Approval Order in the form acceptable to the Parties or an order substantially similar, requesting, *inter alia*:

a)   conditional certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.13;

b)   preliminary approval of this Settlement Agreement as set forth herein;

c)   the scheduling of a Final Fairness Hearing and briefing schedule for a Motion For Final Approval and for a Motion for Attorneys' Fees and Expenses;

d)   appointment of Proposed Class Counsel as Class Counsel;

e)   appointment of Representative Plaintiff as Class Representative;

f)   approval of a customary form of short notice to be mailed (and, where possible, emailed) to Settlement Class Members with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, claims for Credit Monitoring Services ("Short Form Notice"), and a customary long-form notice ("Long Form Notice"), which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the settlement set forth in this Settlement Agreement,

instructions for how to object to or opt out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g)      appointment of a Claims Administrator; and

h)      approval of a Claim Form.

The Notice and Claim Form shall be reviewed by the Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2.    The Notice Program. Within 7 days of an order directing class notice, Defendant will provide to the Claims Administrator the Class List. Notice shall be provided to Settlement Class Members in accordance with the Notice Program set forth below at ¶¶ 3.2.1 – 3.2.4. The Notice Program shall be subject to approval by the Court as meeting constitutional due process requirements. Prior to the Final Fairness Hearing, Proposed Class Counsel and/or the Claims Administrator shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with the Notice Program.

3.2.1. Short Form Notice. On or before the Class Notice Date, the Claims Administrator shall mail (and, where possible, email) the Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, e.g., claims for Credit Monitoring Services. The Claims Administrator shall mail a copy of the Short Form Notice via

United States Postal Services ("USPS") first class mail to all Settlement Class Members on the Class List. For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent updated addresses are identified. The Claims Administrator need make only one attempt to resend any Short Form Notices that are returned as undeliverable. The Claims Administrator shall email a copy of the Short Form Notice to all Settlement Class Members for whom Paradies can ascertain an email address from its records with reasonable effort.

3.2.2. <u>Long Form Notice</u>. On or before the Class Notice Date, the Claims Administrator shall post the Long Form Notice on the settlement website in the form agreed to by the Parties and approved by the Court.

3.2.3. <u>Settlement Website</u>. As soon as practicable following entry of the Preliminary Approval Order, but prior to the Class Notice Date, the Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the Claims Period, and shall post on the website the Long Form Notice and Claim Form approved by the Court, as well as this Settlement Agreement, the Motion for Final Approval of Class Action Settlement, the Motion for Attorneys' Fees and Expenses, the Preliminary Approval Order, and the Final Approval Order and Judgment. The URL of the settlement website shall be agreed

upon by Class Counsel and Defendant. The settlement website shall remain operational until at least five (5) business days after the last payment or credit under this settlement is terminated.

   3.2.4. <u>Toll-Free Help Line</u>. From the Class Notice Date and thereafter until at least five (5) business days after the last payment under this settlement is made or the settlement is terminated, the Claims Administrator shall establish and maintain a toll-free help line for Settlement Class Members to call with settlement-related inquiries, with the option to leave a message and request a call back, with such calls being returned within three (3) business days, and answering the questions of Settlement Class Members, to the extent possible, who call with or otherwise communicate such inquiries. The Claims Administrator also will provide copies of the forms of the Long Form Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.

  3.3. The Long Form Notice, Short Form Notice and Claim Form approved by the Court may be adjusted by the Claims Administrator in consultation and agreement with the Settling Parties as may be reasonable and not inconsistent with such approval.

  3.4. Within ten (10) days of the filing of the Motion for Preliminary Approval, Angeion shall provide the CAFA Notice as required by 28 U.S.C. § 1715(b). The cost of the CAFA Notice shall be paid by Payor.

3.5.    The Notice Program shall commence by the Class Notice Date and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.6.    Proposed Class Counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

## 4.  **Opt-Out Procedures**

4.1.    Each individual wishing to exclude themselves from the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. Individuals wishing to opt out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted. The written notice must clearly manifest an individual's intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked by the Opt-Out Date. All opt-out requests sent to anyone other than the Claims Administrator, including requests previously sent to Proposed Class Counsel and/or Paradies's counsel, are ineffectual and shall be deemed null and void.

4.2.    All individuals who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All individuals falling within the definition of the Settlement

Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3.    Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Class Counsel and Paradies's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List"). No later than ten (10) days prior to the Final Fairness Hearing, Class Counsel shall file this Opt-Out List with the Court for purposes of being attached to the Judgment to be entered upon final approval.

## 5.  **Objection Procedures**

5.1.    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the name or caption of this Litigation; (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a statement identifying all class action settlements

34

objected to by the objector in the previous five (5) years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative, if any. To be timely, written notice of an objection in the appropriate form must be: (a) electronically filed by the Objection Date; or (b) mailed first-class postage prepaid to the Clerk of Court for the United States District Court for the Northern District of Georgia and postmarked by no later than the Objection Date.  Objections must also be served concurrently with their filing or mailing upon Proposed Class Counsel and counsel for Paradies either via the Court's electronic filing system (if filed electronically) or via U.S. mail (if mailed to the Clerk of Court) at the addresses set forth below for Proposed Class Counsel and Paradies's counsel in the signature blocks at the end of this Agreement.

5.2.    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be

DocuSign Envelope ID: E00A35AB-1925-412C-B5B5-ED7FEE85C01B

pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

5.3.    The Parties will have the same right to seek discovery from any objecting Settlement Class Member as they would if the objector was a party in the Litigation, including the right to take the objector's deposition. Such discovery will be conducted on an expedited basis, and the objecting Settlement Class Member is required to respond to any written discovery within fourteen (14) days and must appear for deposition within fourteen (14) days after a deposition is noticed.

## 6.  **Release**

6.1.    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged Paradies, the Related Entities and the Released Persons from all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiff, shall, either directly, indirectly, representatively, on their own behalf or on behalf of any class or other person or entity, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action, regulatory action, arbitration, or court

or other proceeding in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim is asserted.

**7.** **Proposed Class Counsel's Attorneys' Fees and Expenses**

7.1. The Settling Parties did not discuss the payment of attorneys' fees and litigation expenses , as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that the Settlement Fund would be used to pay reasonable attorneys' fees and litigation expenses  as may be agreed to by Paradies and Proposed Class Counsel and/or as ordered by the Court, or, in the event of no agreement, then as ordered by the Court. Paradies and Proposed Class Counsel have agreed to the following:

7.2. Paradies takes no position on an application by Proposed Class Counsel for an award of attorneys' fees not to exceed 33% of the Settlement Fund and litigation costs and expenses in an amount not to exceed $15,000, subject to Court approval. The Claims Administrator shall, from the Settlement Fund, pay any attorneys' fee and expenses award approved by the Court.

7.3. The Claims Administrator shall, from the Settlement Fund, pay the Court-approved amount of attorneys' fees and expenses to Proposed Class Counsel within ten (10) days after the Effective Date. Proposed Class Counsel shall provide payment instructions and completed W-9 Forms prior to the deadline for these. Neither Class Counsel nor counsel for Paradies intend anything contained herein to

DocuSign Envelope ID: E00A35AB-1025-412C-B5B5-ED7FFE85C01B

constitute legal advice concerning the tax consequences of any amount paid hereunder nor shall it be relied on as such.

7.4.    If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court), Paradies shall have no obligation to pay attorneys' fees and litigation costs or expenses and shall only be required to pay costs and expenses related to notice and administration that were already incurred. Under no circumstances will Proposed Class Counsel or any Settlement Class Member be liable for any costs or expenses related to notice or administration.

7.5.    The amount(s) of any award of attorneys' fees and expenses are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees and expenses ordered by the Court to Proposed Class Counsel or Representative Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

## 8.  <u>Administration of Claims</u>

8.1.    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2. Proposed Class Counsel and Paradies's counsel shall be given reports as to both claims and distribution and have

the right to review and obtain supporting documentation and challenge any such claim if they believe it to be inaccurate or inadequate. The Claims Administrator's final determination of the validity or invalidity of any claims shall be binding, subject to the Dispute Resolution process set forth in ¶ 2.11.

8.2.    Payments for Approved Claims shall be sent to the claimants within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. No Approved Claims shall be paid until after the Effective Date. If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court) prior to the payment of Approved Claims, Paradies shall have no obligation to pay such claims and shall only be required to pay costs and expenses related to notice and administration that were already incurred.

8.3.    All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4.    No Settlement Class Member  shall have any claim against Paradies, Proposed Class Counsel, Plaintiff, and/or Paradies's counsel based on distribution of benefits to Settlement Class Members.

8.5.    The Parties, Proposed Class Counsel, and Paradies's counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Claims Administrator, or any of its respective designees or agents, in connection with the Claims Administration or otherwise; or (ii) the determination, rejection, administration, calculation or payment of any Claims.

## 9.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

9.1.    The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)    the satisfaction of Section 12 by Carrier Approval,

b)    the Court has entered the Preliminary Approval Order, as required by ¶ 3.1;

c)    the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)    the Judgment has become Final, as defined in ¶ 1.16.

9.2.    If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.3 unless

Proposed Class Counsel and Paradies's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3.    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into (and without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue) and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party, and (b) the terms and provisions of the Settlement Agreement shall be void and have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, including but not limited to ¶ 9.4, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees and litigation costs or expenses shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Payor shall be obligated to pay amounts already billed or incurred for costs of Notice and Claims

Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

9.4.    This Settlement Agreement may be terminated and/or cancelled by any of the Parties if (i) the Court rejects, materially modifies, materially amends, or changes, or declines to preliminarily approve or finally approve the Settlement Agreement apart from the award of attorneys' fees and expenses; (ii) an appellate court reverses the Preliminary Approval Order and/or Judgment, and the Settlement Agreement is not reinstated and finally approved without material change by the Court on remand; or (iii) the Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the proposed Preliminary Approval Order, the Preliminary Approval Order, the proposed Judgment, the Judgment, or the Settlement Agreement, other than the amount of attorneys' fees and expenses.

10. **Non-Disparagement**

10.1.   Representative Plaintiff shall not make, publish, or state, or cause to be made, published, or stated, any defamatory or disparaging statement, writing or communication pertaining to Paradies, or its directors, officers, and employees, and/or affiliates, and Related Entities.

## 11. **Miscellaneous Provisions**

11.1. The Settling Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement; (iii) and agree to exercise their commercially reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2. The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, that it reflects a settlement that was reached voluntarily after consultation with competent legal counsel, and that for the purpose of construing or interpreting this Agreement, the Settling Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Litigation, except as set forth herein.

11.3.   Neither the Settlement Agreement, nor the settlement terms contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, the Agreement along with all related communications and documents exchanged in connection with the Agreement and mediation between the Parties shall be deemed a negotiation for settlement purposes only under Federal Rule of Procedure 408 and will not be admissible in evidence or usable for any purposes whatsoever in the Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Person. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4.  The terms of this Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approved by the Court; provided, however, that after enter of the Preliminary Approval order, the Parties may by written agreement, effect such amendments or modifications of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

11.5.  The Settlement Agreement constitutes the entire agreement among the Parties hereto, and no representations, warranties or inducements have been made to any Party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs. This Agreement supersedes all previous agreements made between Plaintiff and Paradies.

11.6.  Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the

DocuSign Envelope ID: E00A35AB-1025-412C-B5B5-ED7FFE85C01B

Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

11.7.   The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the release contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon her or its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

11.8.   If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days unless otherwise specified.

11.9.   Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties, through their respective counsel, shall consult with each other in good faith prior to seeking Court intervention.

11.10. Each counsel or other individual executing the Settlement Agreement on behalf of any Settling Party hereto hereby warrants that such individual has the full authority to do so.

11.11. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

11.12. The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

11.13. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

11.14. The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the state of Georgia, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the state of Georgia.

11.15. The Final Fairness Hearing shall be scheduled no earlier than: (i) one hundred (100) days after the notices are made in order to comply with the Class

Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d); or (ii) fourteen (14) days after the Claims Deadline, whichever is later.

11.16. The Parties agree to keep this Settlement confidential until it is submitted to the Court for preliminary approval except as otherwise contemplated and agreed by the Parties (*e.g.*, it may be provided to Carriers or otherwise in furtherance of the ability of Paradies to fund).

11.17. As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it.''

11.18. All dollar amounts are in United States dollars (USD).

11.19. Cashing a settlement check (whether paper or electronic) is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks and electronic payments shall be void ninety (90) days after issuance and the checks or emails containing the links to the electronic payments shall bear the language: "This check[/payment] must be cashed[/accepted] within ninety (90) days, after which time it is void." For checks and electronic payments issued for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Loses, and/or Extraordinary Attested Time, if the check or electronic payment becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition

precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and the funds shall be disbursed to a *cy pres* recipient to be agreed upon by the parties and approved by the Court or, if they cannot agree, selected by the Court. The same provisions shall apply to any re-issued check or electronic payment. For any checks or electronic payments that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks or electronic payments become void.  For checks issued for Residual Cash Payments, if the check becomes void, there shall be no reissuance.

11.20. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

11.21.  Payor may make any payment required hereunder prior to the date it is due, *e.g.*, for purposes of administrative convenience.

## 12. **Carrier Approval**

12.1.  Within a week of this Settlement Agreement being fully executed, Paradies shall present this Settlement Agreement to Carriers, who have not agreed upon the fact of settlement or to paying the Settlement Amount, and demand that the Carriers provide Carrier Approval.

12.2.  When that demand is made, the Parties will inform the Court that they have reached class settlement in principle contingent on Carrier Approval, and ask that the case be stayed for ninety (90) days from the demand date to finalize resolution (the "Consideration Period"), subject to ¶ 12.3.

12.3.  If, within sixty-five (65) days of the demand made in ¶ 12.1, the Carriers have not provided Carrier Approval, then:

a.   the Parties shall jointly apply to the Court to order an in-person mediation to include the Parties and the Carriers.  The proposed order shall state that mediation shall continue unless and until agreement is reached or the mediator certifies to the Court that, despite good faith efforts of all participants, further mediation efforts are not warranted.

b.   in any event, the Parties will negotiate in good faith for at least an additional twenty-five (25) days after the initial sixty-five (65) days before reporting back to the Court.  This time period is tolled if the Court orders a mediation prior to the expiration of the Consideration Period, until the conclusion of the mediation.

12.4.  If Carrier Approval is obtained, the Parties will inform the Court and then submit this Settlement Agreement for preliminary approval.  If at any time, Company elects to satisfy the obligations of Carrier as though Carrier Approval had

been provided, they may do so and such election shall constitute "Carrier Approval" for all purposes under this Settlement Agreement.

12.5.  If ninety (90) days passes from the presentation of the demand without Carrier Approval, the Settlement Agreement will be terminated in accordance with Section 9.3.

**IN WITNESS WHEREOF**, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*[Signature Page]*

**MORGAN & MORGAN**

John A. Yanchunis
201 N. Franklin Street, 7th floor
Tampa, FL 33602
jyanchunis@forthepeople.com

**MAXEY LAW FIRM, P.A.**

Ryan D. Maxey
107 N. 11th Street, #402
Tampa, FL 33602
ryan@maxeyfirm.com

*Attorneys for Plaintiff*

**THE PARADIES SHOPS, LLC**

Karen K. Suttle
SVP and General Counsel
Karen.Suttle@paradies-na.com

**HOLLAND & KNIGHT LLP**

Peter N. Hall
Regions Plaza, Suite 1800 1180 West
Peachtree Street, N.W.
Atlanta, Georgia 30309
peter.hall@hklaw.com

Paul Bond
1650 Market Street
Suite 3300
Philadelphia, PA 19104
Paul.bond@hklaw.com

*Attorneys for Defendant The Paradies
Shops, LLC*